LOBRANO, Judge.
Plaintiff,' Eunice White, appeals the granting of summary judgment in favor of defendants Modjeski and Masters, individually and as a joint venture partner of de-Laureal Engineers, Inc. and William B. Conway, the managing partner of Modjeski and Masters. We reverse and remand for a trial on the merits.
Plaintiff alleges in her petition that on January 15, 1984, she was severely injured when an automobile in which she was a passenger was involved in a head-on collision with another vehicle on the Greater New Orleans Mississippi River Bridge. This collision occurred when Jessie Alexander, the driver of the other vehicle, allegedly attempted to make an illegal U-turn in the center of the bridge and lost control of his vehicle. The vehicle in which plaintiff was travelling was then struck from the rear by a third vehicle.
Among the defendants named by plaintiff were the engineering firms of Modjeski and Masters, its managing partner, William *482 B. Conway and deLaureal Engineers, Inc., its joint venture partner. Prior to 1978, Modjeski and Masters and deLaureal Engineers, Inc. were involved in a joint venture which contracted with the Mississippi River Bridge Authority (“MRBA”) and the State of Louisiana to provide services as consulting engineers. Up until October 1977, at the request of MRBA, Modjeski and Masters conducted several studies and issued reports and recommendations on the issue of whether or not a median barrier should be installed on the bridge to improve traffic safety. In 1978, the MRBA terminated its contract with the joint venture of Modjeski and Masters and deLaureal Engineers. However, the record indicates that between 1978 and the date of the accident in this case, Modjeski and Masters continued to provide consulting services to the MRBA regarding traffic.
In her petition, plaintiff alleges that Modjeski and Masters, deLaureal Engineers,[1] the joint venture, Conway and their insurers were negligent for failing to recommend to the MRBA that median barriers be installed on the bridge despite evidence of an increasing number of “cross-over” collisions. Modjeski and Masters individually and as a joint venture partner of de-Laureal Engineers, Inc. and William Conway filed a motion for summary judgment. In support of this motion, Modjeski and Masters argued that the absence of a median barrier did not cause the bridge to be unreasonably dangerous and that it did not owe a duty to the plaintiff to recommend to MRBA the installation of a median barrier.
The trial judge granted summary judgment relying on this Court’s opinion in Carter v. Deitz, 556 So.2d 842 (La.App. 4th Cir.1990), writ denied, 566 So.2d 960 (La.1990), 566 So.2d 992 (La.1990) and 566 So.2d 993 (La.1993). The trial judge reasoned that Carter established that the absence of a median barrier on the Greater New Orleans Mississippi River Bridge did not cause the bridge to be unreasonably dangerous. Absent an unreasonably dangerous condition, the court concluded that no duty existed on the part of Modjeski and Masters to recommend any remedial measures with respect to median barriers. Plaintiff appeals that decision.
Plaintiff argues that the trial court erred in relying on Carter because Carter dealt with conditions existing on the bridge prior to 1977, the year of the Carter accident, and conditions on the bridge deteriorated between 1977 and 1984, the year of the accident in this case. According to plaintiff, those subsequent conditions raise the question of whether median barriers should have been recommended and installed after 1977. Plaintiff also argues that the Carter decision was incorrect and should be overruled.
The issue for our determination is whether the record supports the conclusion that there are no genuine issues of material fact warranting the grant of summary judgment.
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. The party moving for summary judgment must affirmatively and clearly prove the absence of a genuine issue of fact and any doubt must be resolved against summary judgment and in favor of a trial on the merits. Roberts v. Louisiana Coca-Cola Bottling Company, 566 So.2d 163 (La.App. 4th Cir.1990), writ denied, 571 So.2d 647 (La.1990). In determining whether summary judgment is appropriate, the pleadings, affidavits and documents of the mover must be scrutinized closely, while those of the opponent to the motion are to be treated indulgently. Davenport v. Amax Nickel, Inc., 569 So.2d 23 (La.App. 4th Cir.1990), writ denied, 572 *483 So.2d 68 (La.1991). Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991).
In support of its motion Modjeski and Masters submitted a statement of uncontested materia] facts, the affidavit of William B. Conway, its managing partner and a supporting memorandum. The statement of uncontested facts and the Conway affidavit both state that after submission by Modjeski and Masters of an October 13, 1977 report addressing the issue of physical modifications needed to improve the safety of the bridge and the question of the installation of a median barrier, the MRBA did not request any additional studies, reports or recommendations on these specific issues.
Included in the record is a copy of a portion of the minutes of the January 24, 1978 MRBA Board meeting which includes a reference to the termination of the contract for consulting engineering services between the MRBA and the joint venture of deLaureal Engineers and Modjeski and Masters, effective February 1, 1978. However, also included in the record are several letters from Modjeski and Masters to MRBA dated after the termination of the joint venture contract but before 1984 which suggest that they were asked by the MRBA to do certain traffic safety studies on the bridge. In letters dated March 20, 1979, October 6, 1981 and June 9, 1982 Modjeski and Masters provided statistical data on traffic flow, accidents, etc. for the calendar years 1978, 1980 and 1981. Although the letters do not specifically mention median barriers, they are obviously in response to some type of request from the MRBA. Based on the record before us, we are unable to determine the nature or specifics of the MRBA’s requests. However, we do note that each letter contains a closing paragraph titled “recommendation”. In our opinion, questions of material fact exists regarding Modjeski and Masters’ role vis-a-vis the MRBA subsequent to 1977 which preclude summary judgment.
We hold that the trial court erred in relying on the Carter case in granting summary judgment. Although that case resolved the issue of whether or not the absence of median barriers created an unreasonable dangerous condition prior to August 13, 1977 the date of Carter’s accident, it is not dispositive of accidents occurring seven years later. Because there are questions of fact as to (1) whether events or conditions changed from 1977 to 1984 and (2) the extent of Modjeski and Masters’ role with respect to safety studies on the bridge after the joint venture’s termination in 1978, we hold that summary judgment was not appropriate. Accordingly we reverse and remand for further proceedings.
REVERSED AND REMANDED.

. deLaureal Engineers was previously granted a summary judgment in this matter because its contract with the MRBA for consulting engineering services was terminated in 1978. Furthermore, deLaureal advised the MRBA in 1983 that reliance on studies conducted by deLaureal prior to 1978 was misplaced due to the passage of time and possible changes in conditions and state of the art of bridges.